USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/15/21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
LUIS MARRERO,

                         Plaintiff,

              -against-

DR. KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

                        Defendant.[1]
------------------------------------------------------------X

**DECISION AND ORDER**

20 Civ. 3872 (PED)

**PAUL E. DAVISON, U.S.M.J.**

    Plaintiff Luis Marrero brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of a final determination of the Commissioner of Social Security (the "Commissioner") denying his application for disability benefits (specifically, Supplemental Security Income). On September 4, 2020, the parties consented to my jurisdiction for all purposes pursuant to 28 U.S.C. § 636(c). Dkt. #29.

    Presently before this Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. #34 (plaintiff's motion), #35 (plaintiff's memorandum of law), #41 (defendant's cross-motion), #42 (defendant's memorandum of law) and #43 (plaintiff's reply)). Plaintiff argues, as the basis for his motion, that the Administrative Law Judge ("ALJ"): (1) erroneously relied on the vocational examiner's testimony; (2) failed to account for all of plaintiff's limitations in formulating his residual functional capacity ("RFC"); (3) failed to obtain certain medical records; and (4) erroneously

---

    [1] Dr. Kilolo Kijakazi is now Acting Commissioner of the Social Security Administration and is substituted for former Commissioner Andrew Saul as the defendant in this action, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

relied upon plaintiff's ability to perform activities of daily living ("ADLs"), his non-compliance with prescribed treatment and his conservative treatment in determining that he is able to perform light work. Dkt. #35, at 14-30.[2] Defendant asserts, in response, that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision. Dkt. #42, at 11-35. For the reasons set forth below, plaintiff's motion is **DENIED** and defendant's motion is **GRANTED**.

## I. BACKGROUND

The following facts are taken from the administrative record ("R.") of the Social Security Administration, filed by defendant on November 3, 2020 (Dkt. #31).[3]

A. Application History

On January 20, 2017, Mr. Marrero filed an application for SSI benefits, alleging that he had been disabled since August 15, 2011 due to depression, anxiety, shoulder/neck/back problems and arthritis. R. 231-41, 270. Plaintiff's onset date was subsequently amended to December 21, 2016. R. 265. His claim was administratively denied on June 26, 2017, and denied upon reconsideration on November 8, 2017. R. 136-40, 144-47. Mr. Marrero requested a hearing before an ALJ; a hearing was held on December 20, 2018 before ALJ Deirdre R. Horton. R. 44-87, 148-51. Mr. Marrero appeared with counsel and testified at the hearing. R. 46, 52-75.[4] On February 19, 2019, the ALJ issued a written decision in which she concluded that Mr.

---

[2] Citations to specific page numbers reflect document (and not ECF) pagination.

[3] The Court conducted a plenary review of the entire administrative record, familiarity with which is presumed. I assume knowledge of the facts surrounding plaintiff's medical treatment and do not recite them in detail, except as germane to the analysis set forth below.

[4] Vocational expert Richard Hall also testified at the hearing. R. 75-86.

Marrero was not disabled within the meaning of the Social Security Act ("SSA"). R. 15-26. The

ALJ's decision became the final order of the Commissioner on January 23, 2020, when the

Appeals Council denied plaintiff's request for review. R. 1-6. This action followed.[5]

B.  Vocational Examiner Hearing Testimony

Prior to the hearing, plaintiff's counsel submitted a brief in which he challenged the

qualifications and methodology of the vocational examiner (Richard Hall). R. 329-31. In

particular, plaintiff's counsel:  (1) asserted that Mr. Hall has a "long history" of false, inaccurate

testimony regarding available job numbers; (2) discussed a lawsuit brought by Mr, Hall against

his employer in which he alleged that he had been terminated (in lieu of reasonable

accommodation) due to a cognitive impairment; and (3) questioned the nature of the impairment,

whether it had resolved and whether it would prevent Mr. Hall from providing accurate and

credible testimony. *Id.* At the start of the hearing, the ALJ addressed plaintiff's counsel's

submission:

> And our discussion primarily related to the portion of the objection relating to
> some issue that Mr. Hall . . . had with respect to a prior employer quite some time
> ago. I don't think it's identified in this record – I mean in this letter – but I
> believe it was 12 to 15 years ago when that problem arose, and [in] particular
> referencing some cognitive issue that was happening back then. And as I
> indicated to you, Mr. Shapiro, I'm going to put your letter in and your objection.
> It will be part of the record. But I am not going to permit you to question Mr. Hall
> regarding that issue.

R. 47.

Following plaintiff's testimony, the ALJ began her examination of Mr. Hall. R. 75. The

ALJ asked Mr. Hall if jobs existed in the national economy that could be performed by an

---

[5]  Plaintiff commenced this action in the District of Connecticut; it was transferred to this
Court on May 19, 2020.  Dkt. #1.

individual of the same age, education and work background as plaintiff, who is limited to light

work and who has the following additional limitations: occasional ramps, stairs, ladders, ropes

and scaffolds; frequent balancing; occasional stooping, kneeling, crouching and crawling; must

avoid concentrated exposures to hazardous machinery (exposed, fast-moving parts) and

unprotected heights; limited to simple, routine tasks; no work with the general public; works best

in a setting with few changes; and no overhead reaching on the right (dominant hand), R. 75-76.

Mr. Hall testified that the following jobs were available for such an individual: laundry attendant

(125,000 jobs in the national economy); parts cleaner (112,000 jobs in the national economy);

and assembly line worker (120,000 jobs in the national economy). R. 76. The ALJ asked Mr.

Hall how he had arrived at those numbers. R. 78. Mr. Hall explained:

> Several resources. The U.S. Department of Labor Bureau of Statistics publishes
> labor market trends in groups of jobs that have commonality. And using my
> professional experience, I'd go in on a periodic basis, and using my professional
> experience, I extract what I believe is a fair number to bring to the court to
> represent a specific DOT title and code. A second resource is Skill-Tran, which
> generates a number. And I compare those numbers with my independent findings.
> The more conservative of those two numbers I bring to the court. Most of the
> time those numbers are close. And thirdly, I'm required to attend special
> conferences yearly. And in those conference are presentations regarding
> retrieving numbers and working numbers through the labor market. And at those
> conferences, I interact with my colleagues that do the same type of work I do, and
> we [INAUDIBLE] particularly the generally accepted methods for obtaining that
> documentation.

R. 78-79.

Plaintiff's counsel then proceeded to question Mr. Hall:

> Q. . . . Now you said that with all of these jobs, that you have your own

method to get them, and then you check them against Job Browser[6] and give the

---

[6] Job Browser is a database information product developed, offered and maintained by
Skill Tran  *See* https://skilltran.com/index.php/home/about.

more conservative number to the court. Is that correct?

A. Correct.

Q. Okay. Beautiful. Can you look up in Job Browser that laundry attendant job?

A. I don't have it open right now, sir.

Q. Okay. Can you open it up?

A. My computer is off now.

Q. Is it off or is it down?

A. Both.

Q. Oh, okay. Got it. The only reason I ask is because I'm looking at Job Browser right now for it. And Job Browser has 137 jobs, without any zeros behind it. 137, not 125,000.

A. Is that a question?

Q. Oh, I suppose it was a statement. But if I were to put it in terms of a question, if you give the court the more conservative of the numbers, I'm trying to figure out . . . how 125,000 is more conservative than 137 total.

A. I understand what you're saying. All I can report to the court is the findings that I've researched. The court, of course, has the responsibility to figure out what is the significant number; whether, you know, it's 125,000 or whatever. .
. .

Q. But I'm not asking what's a significant number. I'm saying that if the way that you arrive at your numbers as you describe them is accurate, then how did you come to give the court the number of 125,000, when Job Browser has

-5-

under 200 total listed. That's what I'm trying to figure out.

A. Sir, I've already told you I use my own research, and the deviation I'm not able to explain that circumstance. I just reported to the court my findings.

Q. Okay. So if I asked you the same things for the other two jobs, would that be the same number – or I'm sorry – would that be the same answer?

A. Well it would be depending upon if there is a deviation. And if there is, different people use different types of research. And if there's a deviation, yes, that would be my response.

Q. Okay. But either way, for all three jobs, you are saying that you checked them against Job Browser, and that the number you gave is the more conservative of those numbers.

A. That was what my resource is, yes, sir.

Q. I didn't ask if it's one of your resources. I asked if that is what you are saying is your method; that that's what you do. You check your numbers against Job Browser, and you call for the more conservative to the court.

A. Yes, sir. I just wanted to make it clear that that was not my only resource.

R. 81-83. In response to additional questions from plaintiff's counsel, Mr. Hall also testified that he has performed labor market surveys for a little more than forty years, which informs his general knowledge of the labor market. R. 84-85.

Post-hearing, by letter dated January 3, 2019, plaintiff's counsel asserted that the VE's testimony was "critically flawed" because the actual Job Browser numbers for the three jobs he identified (laundry attendant, parts cleaner and assembly line worker) were significantly lower

-6-

than the numbers proffered by the VE. R. 349-50.[7] Thus, plaintiff's counsel argued, the VE's methodology is suspect and his testimony cannot be relied upon to satisfy the Commissioner's burden at Step Five. R. 350.

## II. LEGAL STANDARDS

### A. Standard of Review

In reviewing a decision of the Commissioner, a district court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). *See* 42 U.S.C. § 1383(c)(3). "It is not the function of a reviewing court to decide *de novo* whether a claimant was disabled." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). Rather, the court's review is limited to "'determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard.'" *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (quoting *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002)).

The substantial evidence standard is "even more" deferential than the "'clearly erroneous' standard." *Brault v. Soc. Sec. Admin*, 683 F.3d 443, 448 (2d Cir. 2012). The reviewing court must defer to the Commissioner's factual findings and the inferences drawn from those facts, and the Commissioner's findings of fact are considered conclusive if they are supported by substantial evidence. See 42 U.S.C. § 405(g); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence is "'more than a mere scintilla'" and "'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lamay v. Comm'r of Soc.*

---

[7] Plaintiff's counsel stated that he had attached the printouts from Job Browser to his letter, but the record contains no such printouts. R. 348-50.

*Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted).  "If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) (citation omitted).

"However, where the proper legal standards have not been applied and 'might have affected the disposition of the case, the court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the ALJ.  Failure to apply the correct legal standards is grounds for reversal.'" *Velez v. Colvin*, No. 14 Civ. 3084, 2017 WL 1831103, at *15 (S.D.N.Y. June 5, 2017) (quoting *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004)).  Thus, "[w]hen there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear in relation to the record evidence, remand to the Commissioner "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

B. Statutory Disability

A claimant is disabled under the Social Security Act ("the SSA") when he or she lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In addition, a person is eligible for disability benefits under the

SSA only if

> his physical or mental impairment or impairments are of such severity that he is
> not only unable to do his previous work but cannot, considering his age,
> education, and work experience, engage in any other kind of substantial gainful
> work which exists in the national economy, regardless of whether such work
> exists in the immediate area in which he lives, or whether a specific job vacancy
> exists for him, or whether he would be hired if he applied for work.

*Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

Social Security Regulations set forth a five-step sequential analysis for evaluating
whether a person is disabled under the SSA:

> (1) whether the claimant is currently engaged in substantial gainful activity;
>
> (2) whether the claimant has a severe impairment or combination of impairments;
>
> (3) whether the impairment meets or equals the severity of the specified
> impairments in the Listing of Impairments;
>
> (4) based on a "residual functional capacity" assessment, whether the claimant
> can perform any of his or her past relevant work despite the impairment; and
>
> (5) whether there are significant numbers of jobs in the national economy that the
> claimant can perform given the claimant's residual functional capacity, age,
> education, and work experience.

*McIntyre*, 758 F.3d at 150 (citing 20 C.F.R. §§ 404.1520(a)(4)(I)-(v), 416.920(a)(4)(I)-(v)).[8]  The

claimant bears the burden of proof as to the first four steps of the process.  *See Burgess v. Astrue*,

537 F.3d 117, 120 (2d Cir. 2008).  If the claimant proves that his impairment prevents him from

performing his past work, the burden shifts to the Commissioner at the fifth and final step.  *See*

*Brault*, 683 F.3d at 445.

Additionally, where a claimant suffers from an alleged mental impairment, the ALJ is

---

[8]  In the event that the regulations and Social Security Rulings cited herein were amended
subsequent to the ALJ's decision, I discuss (and have applied) the relevant regulations/rulings as
they existed at the time of the ALJ's decision.

required to utilize a "special technique" at the second and third steps. *See Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008); *see also* 20 C.F.R. §§ 404.1520a, 416.920a.  At step two, in determining whether the claimant has a "severe impairment," the ALJ must rate the claimant's degree of functional limitation in four areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).  If the claimant's mental impairment or combination of impairments is severe, then at step three the ALJ must "compare the relevant medical findings and the functional limitation ratings to the criteria of listed mental disorders in order to determine whether the impairment meets or is equivalent in severity to any listed mental disorder." *Kohler*, 546 F.3d at 266 (citing 20 C.F.R. § 404.1520a(d)(2)).  *See also* 20 C.F.R. § 416.920a(d)(2).  If the claimant suffers from a severe impairment which is not listed (or equivalent in severity to a listed mental disorder), then the ALJ must assess the claimant's RFC.  *See Kohler*, 546 F.3d at 266 (citing § 404.1520a(d)(3)).  *See also* 20 C.F.R. § 416.920a(d)(3).

### III.  THE ALJ'S DECISION

To assess Mr. Marrero's disability claim, the ALJ followed the five-step sequential analysis and applied the "special technique" at steps two and three.  *See* 20 C.F.R. §§ 416.920(a)(4)(i)-(v), 416.920a and discussion, *supra*.  At step one, the ALJ concluded that Mr. Marrero had not engaged in substantial gainful activity since December 21, 2016 (the application date).  R. 17.  At step two, the ALJ concluded that Mr. Marrero had the following severe impairments: degenerative disc disease (cervical and lumbar spine); right shoulder rotator cuff impairment; depressive disorder; and anxiety disorder.  R. 18.

At step three, the ALJ determined that Mr. Marrero's impairments (individually or

combined) did not meet or medically equal the severity of one of the listed impairments in 20

C.F.R. Part 404, Subpart P, Appendix 1.  R. 18-20.  Specifically, the ALJ found that Mr.

Marrero's physical impairments did not meet or medically equal Listing 1.02 (major dysfunction

of a joint) or Listing 1.04 (disorders of the spine).  R. 18-19.  Further, the ALJ found that Mr.

Marrero's mental impairments, considered singly and in combination, did not meet or medically

equal the criteria of listings 12.04 or 12.06.  R. 19.[9]  In making this finding, the ALJ first

considered whether the "paragraph B" criteria are satisfied.  *Id.*  "To satisfy the 'paragraph B'

criteria, the mental impairment must result in at least one extreme or two marked limitations in a

broad area of functioning which are: understanding, remembering, or applying information;

interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing

themselves."  *Id.*  The ALJ found that Mr. Marrero had moderate limitations in all four areas of

functioning.  *Id.*  Thus, the ALJ concluded that the "paragraph B" criteria were not satisfied.  *Id.*

The ALJ also considered whether the "paragraph C" criteria were satisfied, and concluded that

the record evidence failed to establish the presence of the "paragraph C" criteria.  R. 20.  Finally,

the ALJ noted that the limitations identified in the paragraph B criteria are used to rate the

severity of mental impairments at steps 2 and 3 of the sequential evaluation process, whereas the

mental RFC assessment used at steps 4 and 5 "requires a more detailed assessment."  R. 19-20.

Accordingly, the ALJ noted that her RFC assessment "reflects the degree of limitation [I have]

found in the 'paragraph B' mental functional analysis."  R. 20.

　　　Next, the ALJ assessed Mr. Marrero's RFC as follows:

---

[9]  Listing 12.04 is the listing for "depressive, bipolar and related disorders."  *See* 20
C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04.  Listing 12.06 is the listing for "anxiety and obsessive-
compulsive disorders."  *See id.*, § 12.06.

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant is limited to occasional ramps and stairs and ladders, ropes, and scaffolds. He is limited to frequent balancing, occasional stooping, kneeling, crouching and crawling. The claimant he [sic] must avoid concentrated exposure to hazardous machinery (defined as fast moving exposed parts) and unprotected heights. He is also limited to simple routine tasks. The claimant should avoid the general public and he would work best in a setting with few changes in the work place. He is limited to occasional overhead reaching on the right.

R. 20. In reaching this conclusion, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" and "opinion evidence" in accordance with 20 C.F.R. §§ 416.927 and 416.929 and Social Security Ruling 16-3p. *Id.*

At step four, the ALJ determined that Mr. Marrero had no past relevant work. R. 24. At step five, based upon the vocational expert's testimony (and considering plaintiff's age, education, work experience and RFC), the ALJ concluded that Mr. Marrero was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." R. 25. Thus, the ALJ found Mr, Jones "not disabled" as defined in the SSA. R. 25-26.

## IV.  DISCUSSION

A.  Step Five Determination

At Step Five, the ALJ found:

> Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rules.

R. 25. Plaintiff argues that the VE's testimony cannot constitute substantial evidence sufficient

to satisfy the Commissioner's Step Five burden because the VE could not provide supporting data for his job numbers and, therefore, his methodology was flawed.  Dkt. #35, at 14-25.  I disagree and conclude that the ALJ's Step Five finding is supported by substantial evidence.

The Supreme Court has held "that a VE's testimony concerning job incidence numbers may constitute substantial evidence, even when the supporting data underlying that conclusion is not disclosed."  *Poole v. Saul*, 462 F. Supp.3d 137, 164 (D. Conn. 2020) (citing *Biestek v. Berryhill*, 139 S. Ct. 1148, 1157 (2019)).  Further, "[a]n identification of the general sources and consideration of the experience and expertise of the vocational expert suffices; the ALJ need not inquire into the vocational expert's precise methodology."  *Sobieda v. Kijakazi*, No. 20 Civ. 269, 2021 WL 3560924 at *4 (D. Conn. Aug. 12, 2021) (quotation marks and citation omitted).  *See McIntyre*, 758 F.3d at 152 ("a vocational expert is not required to identify with specificity the figures or sources supporting his conclusion, at least where he identified the sources generally").  "The vocational expert's credentials, history of testimony, her ability to answer the ALJ and attorney's questions, and the alleged basis for her testimony are all relevant in providing substantial evidence for her opinion."  *Streich v. Berryhill*, No. 18 Civ. 1977, 2020 WL 563373, at *6 (D. Conn. Feb. 5, 2020) (citing *Biestek*, 139 S. Ct. at 1155), *vacated and remanded sub nom. on other grounds*, 846 F. App'x 80 (2d Cir. 2021).  The issue is whether the VE's testimony, as a whole, constitutes "such relevant evidence as a reasonable mind might accept as adequate to support" a conclusion that there are significant numbers of jobs in the national economy that plaintiff can perform (given his RFC, age, education and work experience).  *See Biestek*, 139 S. Ct. 1148, 1154-57.

Here, the VE relied upon the DOT descriptions of the three representative jobs he identified.  R. 76.  He stated that he formulated job availability data based upon U.S. Bureau of

Labor Statistics and Job Browser information, analyzed in conjunction with his job market research, knowledge and experience. R. 76-79. Mr. Hall's resume was included in the record; at the time of the hearing, Mr. Hall had over thirty-five years' experience as a vocational counselor and had been testifying as an expert at SSA hearings since 1988. R. 81, 84, 326. Plaintiff's counsel submitted pre- and post-hearing challenges to the VE's methodology and was afforded ample opportunity to cross-examine Mr. Hall. Although the ALJ did not specifically address plaintiff's "rebuttal" evidence, she ultimately accepted Mr. Hall's testimony (and implicitly rejected plaintiff's arguments). *See Brault*, 683 F.3d at 448 ("An ALJ does not have to state on the record every reason for justifying a decision."). "An ALJ does not err when he relies on a vocational expert's testimony that is based on personal experience, labor market surveys, and published statistical sources in determining the number of jobs available." *Poole*, 462 F. Supp.3d at 163. At bottom, plaintiff has not shown that the record evidence precludes a reasonable mind from finding that plaintiff could perform a substantial number of jobs that exist in the national economy. Accordingly, I conclude that the ALJ's Step Five determination is supported by substantial evidence.

B. ALJ's Alleged Failure to Address Certain Limitations

*1. Alleged limitation in forward reaching*

Plaintiff argues that the RFC is flawed because it does not account for his limited ability to reach in planes other than overhead. Dkt. #35, at 27. Specifically, plaintiff asserts that the ALJ found plaintiff's rotator cuff injury "severe" but never explained why she included a limitation to overhead lifting but not reaching. *Id.* In support of his argument, plaintiff points to a May 11, 2018 MRI which revealed partial tears of the supraspinatus and infraspinatus tendons

and a SLAP tear of the superior labrum. R. 775-78.[10] Plaintiff also notes that he testified at his

hearing that he cannot lift his right hand above chest level or extend it straight out front. R. 66-

67. Plaintiff also relies on the June 21, 2017 consultative examination by Dr. Joseph Guarnaccia,

who noted plaintiff's "moderate" shoulder pain and limited range of motion in his right shoulder.

R. 379.

The ALJ accorded "minimal" weight to Dr. Guarnaccia's opinion "because it does not

provide a function-by-function limitations [sic] based on the claimant's impairments." R. 24.

Plaintiff does not contest the weight accorded to this opinion or the ALJ's basis for doing so.

Further, although treatment records reflect complaints of right shoulder pain they do not reflect

reports of any specific right shoulder range of motion limitations, and also show that plaintiff

was able to work with the aid of a back brace. R. 437-38, 513-16, 749-50, 756, 759.

Additionally, on June 26, 2018 at plaintiff's initial physical therapy evaluation for neck pain,

plaintiff complained of ongoing right shoulder pain but his right shoulder mobility and range of

motion were within normal limits. R. 781, 783. It was also noted that plaintiff was "self

limiting" and "not performing ROM to full potential." R. 783. Similarly, at a medical evaluation

on September 5, 2018, plaintiff complained of right shoulder pain but physical examination

revealed normal upper extremity joints and full range of motion with tenderness. R. 806-09. In

sum, as defendant asserts, plaintiff points to no evidence establishing the need for a reaching

limitation exceeding the limitation in the RFC for overhead reaching, except for his own self-

serving testimony that he could not reach forward. Dkt. #42, at 22. "A lack of supporting

---

[10] "A SLAP tear is an injury to the labrum of the shoulder, which is the ring of cartilage
that surrounds the socket of the shoulder joint." OrthoInfo, *American Academy of Orthopaedic
Surgeons*, available at https://orthoinfo.aaos.org/en/diseases--conditions/slap-tears/ (accessed
Sept. 7, 2021).

evidence on a matter where the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits." *Reynolds v. Colvin*, 570 F. App'x 45, 46 (2d Cir. 2014). Accordingly, the ALJ did not err by failing to include a reaching limitation in the RFC.

### 2. *Mental impairments*

Plaintiff contends that the RFC is flawed because it does not account for his inability to deal with stress, remain on task and cope with a fixed schedule. Dkt. #35, at 26-27. I disagree.

At step three, the ALJ found that plaintiff has moderate limitations in the ability to understand, remember or apply information, interact with others, concentrate, persist or maintain pace and adapt or manage oneself. R. 19. In assessing plaintiff's RFC, the ALJ noted plaintiff's complaints of depression, anxiety and isolation and his problems with concentration, memory, focus, following directions and being around others. R. 22. The ALJ also noted that, despite plaintiff's allegations of mental health issues, his mental status examinations were largely within normal limits. R. 22. *See* R. 519-20, 637-38, 666-67, 678-79. Further, the ALJ accorded "minimal weight" to the March 30, 2017 opinion from psychiatric consultant Liese Franklin-Zitzkat (opining that plaintiff has moderate to marked limitations in remembering instructions, memory, concentration and withstanding stress and pressures of a routine work day, and marked limitation in his ability to maintain attendance). R. 23-24, 373. The ALJ's RFC assessment reflects her balancing of the evidence and limits plaintiff to work requiring only simple, routine tasks, no interaction with the general public and few changes in the work place. R. 20.

Plaintiff does not contest the minimal weight accorded to Dr. Franklin-Zizkat's opinion, nor the ALJ's rationale for doing so. Plaintiff points to no other evidence that he would have schedule limitations; he does not identify any evidence the ALJ overlooked or any specific

stressors that the ALJ did not accommodate.  Accordingly, plaintiff's claim that the ALJ failed to accommodate certain mental impairments is meritless.

C.  Duty to Develop the Record

Plaintiff argues that the ALJ failed to meet her duty to develop the record, because she failed to obtain treatment records from St. Barnabas and The Connection.  Dkt. #35, at 28-29. Specifically, plaintiff asserts that the St. Barnabas records reflect treatment prior to June 2017 (when plaintiff lived in the Bronx), and The Connection records include psychiatric treatment notes and documentation of a head trauma in July 2017.  *Id.* at 7, 10. 28-29.

It is well-settled that the ALJ has an affirmative obligation to develop the record.  *See Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).  "To be sure, the ALJ's general duty to develop the administrative record applies even where the applicant is represented by counsel, but the agency is required affirmatively to seek out additional evidence only where there are 'obvious gaps' in the administrative record." *Eusepi v. Colvin*, 595 F. App'x 7, 9 (2d Cir. 2014 (citation omitted).  "Accordingly, the duty to develop the administrative record is triggered only if the evidence before the ALJ is inadequate to determine whether the plaintiff is disabled." *Christine M. R. v. Saul*, No. 19 Civ. 1752, 2021 WL 129415, at *12 (D. Conn. Jan. 14, 2021) (quotation marks and citation omitted).  "When an unsuccessful claimant files a civil action on the ground of inadequate development of the record, the issue is whether the missing evidence is significant, and plaintiff bears the burden of establishing such harmful error." *Id.* (quotation marks and citation omitted).  "To demonstrate prejudice the claimant must show that the additional medical reports would undermine the ALJ's decision." *Mary D. v. Kijakazi*, No 20 Civ. 656, 2021 WL 3910003, at *3 (D. Conn. Sept. 1, 2021) (quotation marks and citation omitted).

Under the governing regulations:

the ALJ "shall make every reasonable effort to obtain from the individual's
treating physician (or other treating health care provider) all medical evidence,
including diagnostic tests, necessary in order to properly make" the disability
determination. 42 U.S.C. § 423(d)(5)(B); accord 20 C.F.R. §§ 404.1512(b),
416.912(b). The regulations define this as, at a minimum, "the records of [a
claimant's] medical source(s) covering at least the 12 months preceding the month
in which" a claim is filed. 20 C.F.R. §§ 404.1512(b)(1), 416.912(b)(1). "Every
reasonable effort" means that the Social Security Administration must make an
initial request for evidence from [a claimant's] medical source and, at any time
between 10 and 20 calendar days after the initial request . . . make one follow-up
request to obtain the medical evidence necessary to make a determination. The
medical source will have a minimum of 10 calendar days from the date of [the
SSA's] follow-up request to reply, unless [the SSA's] experience with that source
indicates that a longer period is advisable in a particular case. *Id.* §§
404.1512(b)(1)(i), 416.912(b)(1)(I).

*Franklin v. Saul*, 482 F. Supp.3d 250, 267 (S.D.N.Y. 2020) (citation omitted).

Here, the SSA requested records from St. Barnabas in January 2017 and February 2017,

and again in February 2018. R. 102, 322. Moreover, plaintiff fails to identify the relevance of

the St. Barnabas records or to explain how these records would undermine the ALJ's decision.

As to records from The Connection, there is no evidence that the SSA made any attempt to

procure them. That failure, however, is of no moment. Plaintiff fails to explain how records

documenting treatment for a head trauma in July 2017 are significant to establishing his claims of

impairment. Further, although plaintiff apparently sought treatment for his mental health issues

at The Connection in 2017, in June 2018 he sought mental health treatment from Cornell Scott

Hill Health Center and explained that he dropped out of treatment at The Connection because he

was not receiving the right treatment or medication. R. 301, 633. Plaintiff does not contend that

his mental health condition in 2017 differed from his mental health condition during his

treatment at Cornell. Thus, plaintiff fails to demonstrate that records from The Connection

would undermine the ALJ's decision. Accordingly, any failure to obtain records from St.

Barnabas and The Connection was harmless error.

D.  Substantial Evidence Supports the ALJ's Conclusion that Plaintiff Can Perform Light Work

Plaintiff argues that the ALJ erroneously relied upon plaintiff's ability to perform

activities of daily living ("ADLs"), his non-compliance with prescribed treatment and his

conservative treatment in determining that he is able to perform light work.  Dkt. #35, at 29-30.

Plaintiff specifically argues: (1) his ability to perform ADLs does not equate with an ability to

perform light work; (2) "conservative treatment is not an indicia of the level of impairment"; and

(3) the ALJ's finding that non-compliance "indicates that he has not required treatment and/or

even without treatment, the claimant's symptoms are not as ongoing or disabling as he alleges"

(R. 22) constitutes an improper medical opinion.  *Id.*

First, in assessing plaintiff's complaints of disabling symptoms, the ALJ did not err in

considering plaintiff's "own account of his participation in a range of daily activities during the

period in question," including spending up to six hours outside each day, biking, cooking,

cleaning and taking public transportation.  R. 23, 57, 60, 372, 682.  *See Wavercak v. Astrue*, 420

F. App'x 91, 94 (2d Cir. 2011).  *See also James P. v. Berryhill*, No. 18 Civ. 397, 2020 WL

137241, at *8 (N.D.N.Y. Jan. 13, 2020) ("The ALJ properly relied on plaintiff's activities as a

factor in his overall evaluation of the medical opinion evidence and in formulating plaintiff's

RFC."); 20 C.F.R. § 416.929(c)(3)(i).  Second, "[w]hile conservative treatment alone is not

grounds for an adverse credibility finding, . . . the ALJ may take it into account along with other

factors."  *Rivera v. Comm'r of Soc. Sec.*, 368 F. Supp.3d 626, 646-47 (S.D.N.Y. 2019) (internal

citation omitted), *appeal dismissed* (May 31, 2019).  Similarly, an ALJ may properly consider

plaintiff's non-compliance with treatment in weighing his credibility.  *Wynn v. Comm'r of Soc.

Sec.*, 342 F. Supp.3d 340, 351 (W.D.N.Y. 2018).  Thus, the ALJ did not err in considering that

plaintiff had been discharged from physical therapy "for noncompliance with attendance policy.

R. 21-22, 764.

Further, as the ALJ noted, plaintiff's complaints of disabling pain were contradicted by clinical findings: no lower extremity edema, clubbing or cyanosis; normal neurological function (no focal deficits and normal sensation, reflex, coordination, muscle strength and tone); normal gait; negative straight leg raising; and full extremity strength. R. 21-22, 396, 416-17, 423, 443, 456, 473, 515, 534, 541-42, 561, 588, 600, 604, 609, 809. The ALJ also weighed plaintiff's complaints of worsening back pain against diagnostic imaging which revealed that plaintiff's back impairment was mostly stable, with mild narrowing and no fracture. R. 21, 765-68. Additionally, the ALJ pointed to treatment notes containing multiple references to work activity during the relevant period, which contradicted the severity of plaintiff's claimed physical limitations. R. 23, 387, 391, 401, 407, 415, 470, 472, 540, 547, 555, 565, 570, 586-87, 645, 749, 753, 756, 759. At bottom, substantial evidence supports the ALJ's conclusion that plaintiff can perform light work.

## V.  CONCLUSION

For the reasons set forth above, the Commissioner's motion is **GRANTED** and plaintiff's motion is **DENIED**.

The Clerk of the Court is directed to terminate the pending motions (Dkt. #34, #41) and close this case.

Dated: September 15, 2021
         White Plains, New York

SO ORDERED.

PAUL E. DAVISON, U.S.M.J.